UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

v.

JARED GUERRERO,

       Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
22-CR-265 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On December 15, 2023, Defendant pled guilty to a lesser-included offense of Count One of a two-count Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Plea Agreement ¶ 1, ECF No. 114. The Court now sentences Defendant and provides a complete statement of reasons, pursuant to 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to seventy-eight (78) months' imprisonment; four years' supervised release with both the special and standard conditions of supervision; forfeiture in accordance with the Orders of Forfeiture; and a $100.00 mandatory special assessment.

## I. BACKGROUND

From December 2020 to February 2022, Defendant directed a drug-trafficking conspiracy and organized sales of illegal narcotics—including heroin, fentanyl, and a fentanyl analogue—to undercover law enforcement officers posing as ordinary customers. Sealed Presentence Investigation Report ("PSR") ¶¶ 12, 14, ECF No. 174. Defendant used co-defendants Wesner Frederique and Steven Cohen as "runners" to deliver the drugs in exchange for cash. *Id.* ¶ 12. Defendant is personally responsible for distributing 188.772 grams of fentanyl and 245.317 grams of fentanyl analogue in connection with this conspiracy. *Id.* ¶ 14.

*Procedural History*

On June 22, 2022, Defendant was arrested and his residence searched. PSR ¶¶ 14, 16; Gov't Sent'g Mem. at 3, ECF No. 209. During the search, law enforcement recovered, among

other things, cash, narcotics packaged for distribution, a firearm, ammunition, and multiple cell phones. Gov't Sent'g Mem. at 3

On December 15, 2023, Defendant pled guilty to a lesser-included offense of Count One of a two-count Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Plea Agreement ¶ 1, ECF No. 114. On January 23, 2024, consistent with the Plea Agreement (¶¶ 6–11), the Court granted a preliminary order of forfeiture forfeiting the seized assets comprising $16,920.00 in cash, a firearm, and ammunition. *See generally* Preliminary Order of Forfeiture, ECF No. 126. On August 2, 2024, the Court granted a final order of forfeiture finalizing the same. *See generally* Final Order of Forfeiture, ECF No. 162.

## II. LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III. ANALYSIS

#### A.   The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first Section 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1.   *Family and Personal Background*

Defendant was born on December 22, 1988, in Santo Domingo, Dominican Republic. PSR ¶¶ 46, 52. Defendant's parents were never married. *Id.* In 1994, when Defendant was six years old, he and his mother moved to the United States. *Id.* ¶¶ 48, 52. His father remained in the Dominican Republic and was never a consistent presence in Defendant's life. *Id.* Defendant's mother resides in Queens, New York, and owns two barbershops. *Id.* ¶ 46. Defendant is close with his mother: they communicate daily, and she is aware of the instant offense and supportive. *Id.*

Defendant has one maternal sibling and two paternal siblings. *Id.* ¶ 47. Defendant's maternal sibling resides in Queens, New York. *Id.* She is aware of the instant offense and

3

supportive; she and Defendant communicate weekly. *Id.* Defendant is not close with his paternal siblings, but they are aware of the instant offense and supportive. *Id.*

Defendant was raised in Bayside Hills, Queens, in a middle-income household free of abuse. *Id.* ¶¶ 48, 52. In 2022, he married his current wife, who is aware of the instant offense and supportive. *Id.* ¶ 50. They live together in Williamsburg, Brooklyn. *Id.* ¶ 52. Defendant has a fourteen-year-old daughter from a previous romantic relationship. *Id.* ¶ 49; Def. Sent'g Mem. at 8, ECF No. 206. He visits his daughter weekly and provides financial support for her care. *Id.*

### 2.    *Educational and Employment History*

In 2004, Defendant received his barber's license. *Id.* ¶ 68. In 2008, he graduated from Benjamin N. Cardozo High School in Queens, New York. *Id.* ¶ 67. That same year, he attended Queensborough Community College but later withdrew due to a lack of interest in his courses. *Id.* ¶ 66. In 2025, Defendant earned an Associate Degree in Cybersecurity from Southern New Hampshire University, where he also made the honor roll. *Id.* ¶ 65; Ex. B to Def. Sent'g Mem., ECF No. 206-2.

From 2004 to 2022, Defendant worked as a barber at one of his mother's barbershops. *Id.* ¶ 72. Since 2019, Defendant has co-owned a recording studio business in Brooklyn. *Id.* ¶ 71. From August 2022 to April 2023, Defendant worked as a group facilitator at The Fortune Society, a non-profit based in Long Island City. *Id.* ¶ 70. Pretrial Services ultimately directed Defendant to resign from that position following multiple violations of his location monitoring program while on pretrial release. *Id.*

### 3. *Prior Convictions*

Defendant has no prior convictions, resulting in a criminal history score of zero and a criminal history category of I. *Id.* ¶ 41.

### 4. *Physical and Mental Health*

As a child, Defendant fell off a bicycle and broke both his elbows. *Id.* ¶ 59. In 2005, he injured his left shoulder while boxing and dislocated his right shoulder while playing football. *Id.* ¶¶ 57–58. In 2007, he fractured his right wrist. *Id.* ¶ 56. Defendant reports no lasting pain from these injuries besides his right shoulder, which hurts in cold weather. *Id.* ¶¶ 56–59.

In 2016, Defendant was diagnosed with sleep apnea. *Id.* ¶ 55. In 2023, he was diagnosed with high blood pressure and cholesterol levels. *Id.* ¶ 54. He is prescribed medications to manage these conditions. *Id.* Defendant is otherwise in good health and does not have any chronic illnesses. *Id.*

With respect to his mental and emotional health, Defendant reports having experienced some depression and anxiety related to his arrest for the instant offense. *Id.* ¶ 60. He reports no other history of mental or emotional health conditions. *Id.* ¶ 61.

### 5. *Substance Abuse*

Defendant reports a history of frequent marijuana use beginning when he was thirteen years old and ending in June 2022. *Id.* ¶ 62. Defendant is interested in receiving substance abuse treatment to ensure he remains sober when not under court supervision. *Id.* ¶ 64; *see also* Def. Sent'g Mem. at 10.

### 6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B.     The Need for the Sentence Imposed**

The second Section 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved directing a conspiracy to sell dangerous and potent narcotics—fentanyl and a fentanyl analogue—to numerous customers in his community, including undercover officers. Defendant supervised the drug-trafficking conspiracy, using his co-defendants as runners to deliver the drugs in exchange for cash. *See supra* Part I. The Court's sentence will deter others from engaging in similar acts and justly punish Defendant for his crimes. The Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

**C.     The Kinds of Sentences Available**

The third Section 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to a lesser-included offense of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Plea Agreement ¶ 1. He faces a statutory minimum term of five years' imprisonment and a maximum term of forty (40) years' imprisonment. 21 U.S.C. § 841(b)(1)(B). He faces a statutory minimum term of four years' supervised release and a maximum term of life. *Id.*

6

Defendant also faces a maximum fine of $5,000,000.00. 21 U.S.C. § 841(b)(1)(B). He owes forfeiture in accordance with the Orders of Forfeiture. *See* Preliminary Order of Forfeiture, ECF No. 126; Final Order of Forfeiture, ECF No. 162. Finally, the Court is required to impose a mandatory special assessment of $100.00 under 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth Section 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for the instant offense—Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances—is U.S.S.G. §2D1.1. Defendant is responsible for 2,925.1 kilograms of converted drug weight, establishing a base offense level of thirty (30). U.S.S.G. §2D1.1(a)(5) and (c)(5). Two offense levels are added because Defendant was an "organizer, leader, manager, or supervisor" of the drug-trafficking conspiracy. U.S.S.G. §3B1.1(c). Three offense levels are subtracted because Defendant timely accepted responsibility. U.S.S.G. §3E1.1(a)–(b). One offense level is subtracted because Defendant participated in a global resolution. U.S.S.G. §5K2.0 (Policy Statement). These adjustments establish a total offense level of twenty-eight (28).

A total offense level of twenty-eight (28) and criminal history category of I result in a Guidelines range of 78–97 months' imprisonment. U.S.S.G. §5A. Probation recommends a bottom-of-the-Guidelines sentence of seventy-eight (78) months' imprisonment; four years' supervised release with a special condition; and a $100.00 mandatory special assessment. Sealed Prob. Sent'g Rec. at 1, ECF No. 174-1. The Government recommends a Guidelines sentence between seventy-eight (78) and ninety-seven (97) months' imprisonment. Gov't Sent'g Mem. at

1. The Government contends "[a] Guidelines sentence is appropriate to promote respect for the law and to send a message—to [Defendant] and to others—that infusing the community with dangerous narcotics will not be tolerated." *Id.* at 7. Defense counsel recommends a below-Guidelines sentence of sixty-six (66) months' imprisonment. Def. Sent'g Mem. at 2. Defense counsel submits letters of support from Defendant's wife, mother, and various other family, friends, and community figures. *See* Ex. C to Def. Sent'g Mem., ECF No. 206-3; ECF No. 208.

The Court appreciates the sentencing arguments raised by all parties and has thoroughly considered each in turn.

### E.     Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any further pertinent policy statements. Finding none on its own, the Court proceeds to the next Section 3553(a) factor.

### F.     The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

On July 11, 2025, the Court sentenced co-defendant Steven Cohen to sixty (60) months' imprisonment, followed by four years' supervised release. Judgment as to Steven Cohen, ECF No. 194. On August 12, 2025, the Court sentenced co-defendant Wesner Frederique to forty-one (41) months' imprisonment, followed by two years' supervised release. Judgment as to Wesner Frederique, ECF No. 203. Like Defendant, Cohen and Frederique each pled guilty to a lesser-included offense of Conspiracy to Distribute and Possess with Intent to Distribute Controlled

Substances, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Mem. & Order as to Steven Cohen at 1, ECF No. 193; Mem. & Order as to Wesner Frederique at 1, ECF No. 201. Unlike Defendant, however, Cohen and Frederique did not receive enhancements for directing the conspiracy under U.S.S.G. §3B1.1(c). Mem. & Order as to Steven Cohen at 6; Mem. & Order as to Wesner Frederique at 7. And Frederique was not subject to the statutory minimum sentence of sixty (60) months' imprisonment because he was eligible for "safety valve" relief. Mem. & Order as to Wesner Frederique at 7.

For the reasons stated in this Memorandum and Order, and considering the other Section 3553(a) factors, Defendant's sentence avoids unwarranted sentence disparities.

### G.     The Need to Provide Restitution

The seventh and final Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case. *See* Plea Agreement ¶ 1(e).

### IV. CONCLUSION

And finally, the Court has this to say. Twenty-five years ago, I took my family to see the Broadway production of the musical *Les Miserables*. Starring in that show was an actor I happened to have gone to school with named Nick Wyman. Nick played the role of the corrupt French inn keeper who sang the song "Master of the House" and gloried in cheating his tenants and stealing jewelry from the dead and dying. His song "Master of the House" became a classic.

After watching his brilliant performance, my family and I joined Nick backstage for a tour of the lighting, costumes, and props. He was kind to my teenage children and talked about his own children, one of whom had special needs, and apologized for having to run off to catch his train home to be with his family. My fifteen-year-old son said, "Thank you very much, Mr.

Wyman. But I have to ask: how can you be such a good man in real life when you just played such a bad man on stage?"

My friend smiled and said, "Well, here is the secret, son: we call it acting. You see, what we do here in the theatre, on stage, is pretending. What we do outside the theatre, in the real world, is what counts. That is what matters. That is what determines whether you are a good man or a bad man: never confuse the two." Having considered all the Section 3553(a) factors in real life, the Court sentences Defendant to seventy-eight (78) months' imprisonment; four years' supervised release with both the special and standard conditions of supervision; and a $100.00 mandatory special assessment. This sentence is sufficient but not greater than necessary to accomplish the purposes of Section 3553(a)(2). The Court does not impose a fine considering Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 5, 2025
       Brooklyn, New York